**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**MCALLEN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| GEC Transport Solutions LLC[1] | ) | Case No. 25-70297 |
| | ) | |
| Debtor. | ) | Eduardo V. Rodriguez |
| | ) | |
| | ) | |

**DEBTOR'S COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN**

Dated: March 3, 2026

**TRAN SINGH LLP**
Susan Tran Adams (TX Bar No. 24075648)
Brendon D. Singh (TX. Bar No. 24075646)
2502 La Branch Street
Houston, Texas 77004
Telephone: (832) 975-7300
Facsimile: (832) 975-7301
Email:  stran@ts-llp.com
         bsingh@ts-llp.com

*Counsel to the Debtor and Debtor in Possession*

---

[1] The last four digits of each Debtor's federal tax identification number are 2318 and the Debtor's principal place of business and service address is 5201 N. Veterans Blvd., Pharr, Texas, 78577.

# TABLE OF CONTENTS

1.1.    History of the Debtor and Assets of the Estate. ................................................. 6

1.2.    Frequently Asked Questions. ........................................................................... 6

    1.2.1.    What is Chapter 11 Bankruptcy? ............................................................ 6

    1.2.2.    Has the Bankruptcy Court approved this Disclosure Statement? .......................... 7

    1.2.3.    How does the Plan get confirmed? ......................................................... 7

    1.2.4.    When is the deadline to return my ballot or file an objection to confirmation of the Plan?    7

    1.2.5.    When and where is the hearing to confirm the Plan? .............................. 7

1.3    Liabilities and Claims against the Debtor. ...................................................... 8

    1.3.1.    Priority Claims. ................................................................................. 8

Below are the Priority Claims scheduled by the Debtor or proofs of claims filed by Claimants asserting a Priority Claim against the Debtor. ........................................................ 8

    1.3.2.    Secured Claims. ................................................................................. 8

    1.3.2.    General Unsecured Claims. ............................................................... 10

The following table below contains the General Unsecured Claims scheduled by the Debtor and/or filed by Claimants. ................................................................................ 10

II.    TRANSFERS AND CLAIM OBJECTIONS. ........................................................ 13

III.    PLAN OF REORGANIZATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS ............................................................................................. 13

3.1.    Definitions. ................................................................................................ 13

3.2.1.    Unclassified Claims. ................................................................................ 19

    3.2.1    Administrative Claims. ..................................................................... 19

    3.2.2.    Summary of Classes of Claims and Equity Interests. ........................... 20

    3.2.3.    Classification of Claims and Equity Interests. .................................... 20

IV.    IMPAIRMENT OF CLASSES & RESOLUTION OF CLAIM CONTROVERSIES ...... 26

4.1.    Impaired Classes entitled to vote. .............................................................. 26

4.2.    Claim Controversies. .................................................................................. 26

V.    TREATMENT OF CLAIMS AND EXECUTORY CONTRACTS .................................. 26

5.1.    Treatment of Impaired Classes. .................................................................. 26

    5.1.1. Treatment of Class 1—Ad Valorem Claims. ...................................... 26

    5.1.2. Treatment of Class 2 – Claims Secured by Equipment or Vehicles. ...................... 27

    5.1.3. Treatment of Class 3 – Other Secured Vehicular Claims. .......................... 29

    5.1.4. Treatment of Class 4 – General Secured Claims. ................................. 30

    5.1.5. Treatment of Class 5– Secured Claims with Collateral to be Surrendered. ................ 30

5.1.6. Treatment of Class 6– Secured Governmental Claims. ............................................... 31

5.1.7. Treatment of Class 7– Unsecured Priority Claims. ................................................... 31

5.1.8. Treatment of Class 8– General Unsecured Claims. ................................................... 32

5.2.      Treatment of Equity Interest Holders. ............................................................................ 35

VI.      MEANS OF IMPLEMENTATION & RISKS ASSOCIATED WITH PLAN ................. 35

6.1.      Source of Payments. ....................................................................................................... 35

6.2.      Allocation of Distributions Between Principal and Interest. .......................................... 35

6.3.      Post-confirmation Management. ..................................................................................... 36

6.4.      Tax Consequences of Plan. ............................................................................................ 36

6.4.1.   Taxation Generally. ...................................................................................................... 36

6.4.2.   Exemption From Certain Transfer Taxes. .................................................................... 36

VII.     EXECUTORY CONTRACTS AND UNEXPIRED LEASES ....................................... 37

VIII.    CAUSES OF ACTION .................................................................................................. 37

8.1.      Preferences. .................................................................................................................... 37

8.2.      Fraudulent Transfers. ..................................................................................................... 38

IX.      VOTING PROCEDURES .............................................................................................. 38

9.1       Ballots and Deadline to Vote. ........................................................................................ 38

9.2.      Creditors Entitled to Vote. ............................................................................................. 38

9.3.      Vote Required for Accepting Classes. ............................................................................ 38

9.4.      Cramdown and Withdrawal of the Plan. ........................................................................ 39

X.       EFFECT OF CONFIRMATION OF THE PLAN ......................................................... 39

10.1.    Discharge of Debtor, Injunction, and Vesting of Property of the Estate. ...................... 39

10.2.    Final Decree. .................................................................................................................. 39

10.3.    Legally Binding Effect. .................................................................................................. 39

10.4.    Limited Protection of Certain Parties. ........................................................................... 40

10.5.    Anti-Discrimination Provisions of Bankruptcy Code. ................................................... 40

10.6.    Preservation of Claims and Rights. ................................................................................ 40

10.7.    Retention of Jurisdiction by Bankruptcy Court. ............................................................ 41

XI.      CLAIM OBJECTION PROCEDURES, TREATMENT OF DISPUTED CLAIMS, AND
PROCEDURES FOR ASSERTING CLAIMS ................................................................................ 41

XII.     GENERAL PROVISIONS ............................................................................................. 42

12.1.    Bar Date and Objections to Administrative Claims. ...................................................... 42

12.2.    Professional Claims. ...................................................................................................... 43

12.3.    Amendment of the Plan. ................................................................................................. 43

12.4.    Reservation of Claims. ................................................................................................... 43

12.5.    Calculation of Dates. ................................................................................................. 43

12.6.    Governing Law. ........................................................................................................... 43

12.7.    Conflict. ....................................................................................................................... 44

12.8.    Setoffs. ......................................................................................................................... 44

12.9.    Alternative Means to Confirmation. ........................................................................... 44

12.10.   Alternative Plans of Reorganization. .......................................................................... 44

12.11.   Liquidation under Chapter 7. ...................................................................................... 44

## 1.1.    History of the Debtor and Assets of the Estate.

GEC Transport Solutions LLC ("GEC" or the "Debtor") filed its Schedules on October 20, 2025 [Docket No. 36] and amended on November 12, 2025 [Docket No. 48] (the "Schedules"). The Debtor's Schedules are hereby incorporated by reference to this Plan.  Complete copies of the schedules are available from the Clerk of the Court.  The Debtor is a Texas limited liability company and is currently managed by Benjamin Cavazos.  The Debtor is a transportation and logistics company based in Pharr, Texas with nationwide operations.  The Debtor initially ran into financial difficulties in 2020 due to rising insurance costs and a scarcity of drivers and defaulted under several secured promissory notes prompting the Debtor to seek voluntary bankruptcy relief on October 6, 2025.

The primary assets of the bankruptcy estate on the Filing Date and estimated values[2] are:

Table 1

| Description of Asset | Estimated Fair Market Value (per schedules) |
|---|---|
| Depository Accounts | $2,730.06 |
| Accounts Receivable | $3,050,793.36 |
| Office Furniture and Equipment | $14,000.00 |
| Office Supplies | $1,000.00 |
| Trucks and Trailers | $6,850,000.00 |

## 1.2.    Frequently Asked Questions.

### 1.2.1.   What is Chapter 11 Bankruptcy?

Financially distressed companies reorganize their debts or liquidate their assets under Chapter 11 of the United States Bankruptcy Code.  Commencement of a case under Chapter 11 creates an "estate" which contains all legal and equitable interest of the debtor as of the date of filing.  During a Chapter 11 bankruptcy case, the debtor remains in possession of its assets unless the Court orders appointment of a trustee; in this case, no trustee has been appointed.

The Court has not yet confirmed the Plan described in this Disclosure Statement.  This section describes the procedures pursuant to which the Plan will or will not be confirmed.

---

[2] The values set forth herein are the Debtor's good faith estimates provided only for purposes of the required disclosures and shall not be deemed to be a determination of fair market value or any finding of fact or conclusion of law by the Bankruptcy Court as to the valuation of the Oakview Lots.

### 1.2.2.   Has the Bankruptcy Court approved this Disclosure Statement?

No.   On _____, the Bankruptcy Court will consider whether this Disclosure Statement contains adequate information.  "Adequate information" means information of a kind, and in sufficient detail, as far as practicable, considering the nature and history of the Debtor and the condition of the Debtor's books and records, to enable a hypothetical investor of holders of claims or interests to make an informed decision of whether to vote to accept or reject the Plan.  The Bankruptcy Court's approval of this Disclosure Statement is not an endorsement of any of the representations contained in the Disclosure Statement or the Plan.

### 1.2.3.   How does the Plan get confirmed?

Under the Bankruptcy Code, confirmation of the Plan requires at least one class of impaired Claims or Interests vote to accept the Plan.  Acceptance by a Class of claims or interests mean that at least two-thirds in the total dollar amount and more than one-half in number of the allowed Claims or Interests actually voting in the class vote in favor of the Plan.  Because only those claims or interests who vote on a plan will be counted for purposes of determining acceptance or rejection of a plan by an impaired class, a plan can be approved with the affirmative vote of members of an impaired class who own less than two-thirds in amount and one-half in number of the claims/interests.  Besides acceptance of the Plan by each class of impaired creditors or interests, a bankruptcy court must also find that the Plan meets a number of statutory requirements provided by the Bankruptcy Code before the plan is confirmed.  These requirements and statutory tests are designed to protect the interests of the holders of the impaired claims or interests who do not vote to accept the plan but who will be bound by the Plan's provisions if the Plan is confirmed by the Bankruptcy Court.  If one or more classes vote to reject the Plan, the Debtor may still request that the Bankruptcy Court confirm the Plan pursuant to section 1129(b) of the Bankruptcy Code.  In order to confirm a plan not accepted by all classes, the plan proponent must demonstrate that the plan does not discriminate unfairly, is fair and equitable with respect to each class of claims or interests that is impaired under and that has not accepted the plan.

### 1.2.4.   When is the deadline to return my ballot or file an objection to confirmation of the Plan?

The Bankruptcy Court has directed that your ballot and objection to confirmation of the Plan must be received by 5:00 p.m. CST on _____, 2026 and returned in the enclosed envelope to Tran Singh LLP, ATTN: Susan Tran Adams, 2502 La Branch Street, Houston, Texas 77004.

### 1.2.5.   When and where is the hearing to confirm the Plan?

The hearing at which the Court will determine whether to confirm the Plan will take place on _____, 2026 at ___: _____ ___.M. in courtroom, #405, 515 Rusk, Houston, Texas, 77002 in front of the Honorable Judge Eduardo V. Rodriguez.

**1.3    Liabilities and Claims against the Debtor.**

### 1.3.1.  Priority Claims.

Below are the Priority Claims scheduled by the Debtor or proofs of claims filed by Claimants asserting a Priority Claim against the Debtor.

| Unsecured Priority Claimant | Claim No. | Unsecured Priority Claim |
|---|---|---|
| Internal Revenue Service | 10 | $328,070.43 |
| Texas Comptroller | 27 | $1,684.50 |

### 1.3.2.  Secured Claims.

Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under 11 U.S.C. § 506.  If the value of the collateral or setoffs securing the creditor's claim is less than the amount of the creditor's allowed claim the deficiency will be classified as a general unsecured claim.  The following chart lists all classes containing Debtor's secured pre-petition claims and their proposed treatment under the Plan:

Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under § 506 of the Code.  If the value of the collateral or setoffs securing the creditor's claim is less than the amount of the creditor's allowed claim, the deficiency will be classified as a general unsecured claim.

The following table sets forth the potential secured claims in the Debtor's case:

| Secured Claimant | Claim No. | Secured Claim | Deficiency Claim | Collateral |
|---|---|---|---|---|
| Ally Bank | 6 | $61,375.00 | $37,943.87 | 2023 Peterbilt 579 |
| Ally Bank | 16 | $61,375.00 | $37,943.87 | 2023 Peterbilt 579 |
| Alpine Advance 5 LLC | | $68,307.52 | - | All equipment, accounts receivable, depository accounts |
| Utility Trailer (successor to | 26 | $23,233.65 | - | 2020 Utility 4000DX (9) |

| Secured Claimant | Claim No. | Secured Claim | Deficiency Claim | Collateral |
|---|---|---|---|---|
| BMO Harris Bank N.A.) | | | | |
| BMO Harris Bank N.A. | 2 | $63,990.00 | - | 2021 Kenworth T680 (3) |
| Commercial Credit Group (disputed) | 20 | $78,983.80 | - | 2020 Peterbilt 579 (6); 2021 Peterbilt 579 |
| Cross Roads Equipment Finance | 1 | $614,370.46 | | 2023 Wabash DVCVHPC (13) |
| Encore Bank | 21 | $1,145,266.62 | - | 2022 Kenworth T680(6); 2023 Peterbilt 579 (5); 2024 Peterbilt 579 (2) 2005 Great Dane Dry Van (2) 2006 Luftkin TFVC (4); 2006 Luftkin Dry Van (5); 2006 HYTR YL (4); 2006 Great Dane Trailer; 2007 Great Dane Dry Van (6); 2007 VNTC Dry Van; 2008 Utility Dry Van (8) |
| Financial Pacific Leasing | 17 | $58,308.08 | - | Communications equipment |
| First Citizens Bank | 3 | $30,246.00 | - | 2020 Wabash 53' Van (4) |
| Hildago County | 7 | $51,764.59 | | Business property |
| JD Factors, LLC | 25 | $2,587,019.11 | - | All deposits, all equipment, accounts receivable |
| Midland Estates Bank | 4 | $70,000.00 | $39,883.20 | 2023 Kenworth T680 |
| Midland Estates Bank | 5 | $140,000.00 | $95,233.18 | 2023 Kenworth T680 (2) |
| Regions Bank dba Ascentium | 19 | $876,536.30 | | 2023 Kenworth T 680; 2023 |

| Secured Claimant | Claim No. | Secured Claim | Deficiency Claim | Collateral |
|---|---|---|---|---|
| | | | | Peterbilt 579; 2024 Peterbilt 579 |
| Samsara Capital Finance | | Unknown | | Unknown |
| Simmons Bank | 24 | $84,059.75 | - | 2021 Peterbilt 579 (2) |
| Sumitomo Mitsui Finance & Leasing Co. | 22 | $195,363.02 | | 2023 Peterbilt 579 (2) |
| Sumitomo Mitsui Finance & Leasing Co. | 23 | $95,841.29 | | 2023 Kenworth T680 |
| TBK, SSB, a Texas State Savings Bank | 28 | $142,684.05 | | 2021 Kenworth T680 (5) |
| The Huntington National Bank | 18 | $119,745.59 | | 2021 Peterbilt 579 |
| U.S. Small Business Association | 15 | $159,105.30 | | All deposits, all equipment, accounts receivable |
| Wabash National Financial Services | 11 | $65,392.00 | | 202 Wabash Dry Van (8) |

### 1.3.2.   General Unsecured Claims.

The following table below contains the General Unsecured Claims scheduled by the Debtor and/or filed by Claimants.

| Unsecured Claimant | Claim No. | Unsecured Claim |
|---|---|---|
| AIG Property | 6 | $19,550.30 |
| Alan McDaniel | | $  493,112.25 |
| Alan McDaniel | | $  559,180.91 |
| Ally Bank | 8 | $37,943.87 |
| Ally Bank | 16 | $37,943.87 |
| American Express | 13 | $1,495.91 |
| American Express | | $775.77 |
| CA Estates LLC | | $189,206.84 |

| Unsecured Claimant | Claim No. | Unsecured Claim |
|---|---|---|
| Cobalt Funding Solutions | | $193,947.95 |
| Credit Collection Services | | $9.40 |
| Delaware Department of Transportation | | $155.50 |
| E-Z Pass MA State | | $52.65 |
| Escobedo & Cardenas, LLP | | $750.00 |
| F.H. Cann & Associates, Inc. | | $39.32 |
| Forward Financing, LLC | | $76,326.68 |
| Griffith Law Group, LLP | | $775.40 |
| Illinois Tolls | | $343.15 |
| Illinois Tollway | 12 | $7,788.20 |
| Jeffrey Riemersma | | $970.91 |
| Juan Jose Alvarez Chavez | | $1,857.75 |
| Internal Revenue Service | 10 | $83,952.89 |
| Kansas Turnpike Authority | 9 | $9,190.45 |
| Leaf Capital Funding | 30 | $6,833.22 |
| Leaf Capital Funding | 31 | $15,696.51 |
| Leaf Capital Funding | 32 | $11,340.95 |
| Leaf Capital Funding | 33 | $1,251.32 |
| Leaf Capital Funding | 34 | $14,655.87 |
| Leandro Nino | | $298.50 |
| Lexington Insurance Company | | $19,550.63 |

| Unsecured Claimant | Claim No. | Unsecured Claim |
|---|---|---|
| Maryland Transportation Authority | | $5,029.42 |
| Meged Funding Group | 29 | $95,561.25 |
| Midland Estates Bank | 4 | $39,883.20 |
| Midland Estates Bank | 5 | $95,233.18 |
| NCC | | $118.75 |
| NJC Ezpass Delaware River | | $2,090.00 |
| NTTA North Texas | | $10,930.14 |
| NY State Bridge and Tunnels | | $16,107.98 |
| NYS Thruway Authority | | $8,872.61 |
| Ohio Turnpike and Infrastructure Commission | | $145.75 |
| Oklahoma Turnpike | | $1,195.18 |
| Pennsylvania Turnpike Authority | | $659.23 |
| Professional Account Management LLC | | $70.00 |
| River Link Ohio | | $547.32 |
| RMA Cameron County Texas | | $4,263.33 |
| Southern Connector South Carolina | | $67.60 |
| Transportation Specialty Underwriters | | $24,276.20 |
| Treasure Services | | $13,209.73 |

| Unsecured Claimant | Claim No. | Unsecured Claim |
|---|---|---|
| Vantage Bank | | $1,599.59 |
| Vantage Bank | | $4,743.88 |
| Vantage Bank | | $1420.91 |
| Vantage Bank | | $159.14 |

## II. TRANSFERS AND CLAIM OBJECTIONS.

Upon information and belief, the Debtor does not believe there are potential avoidable transfers or other Chapter 5 actions but believe there are potential objections to certain proofs of claim.

Except to the extent that a claim is already allowed pursuant to a final non-appealable order, the Debtor reserves the right to object to claims.  Therefore, even if your claim is allowed for voting purposes, you may not be entitled to a distribution if an objection to your claim is later upheld.

## III. PLAN OF REORGANIZATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS

### 3.1.   Definitions.

Capitalized terms used in this Plan shall have the meanings as set forth in Section III of this Plan.

#### 3.1.1.   Administrative Claim.

Any cost of expense of administration of the Chapter 11 case incurred on or before the Effective Date entitled to priority under section 507(a)(2) and allowed under section 503(b) of the Bankruptcy Code, including but not limited to, any actual and necessary expenses of preserving the Debtor's estate, including wages, salaries, or commissions for services rendered after the commence of the Chapter 11 case, certain taxes, fines, and penalties, any actual and necessary post-petition expenses of operating the Debtor's business, certain post-petition indebtedness or obligations incurred by or assessed against the Debtor in connection with the conduct of its business, or for the acquisition or lease of property, or for providing services to the Debtor, including all allowances of compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under the Bankruptcy Code, and any fees or charges assessed against the Debtor's estate.  With respect to Administrative Claims allowed pursuant to sections 503(b)(2)-(b)(9), there shall be an Administrative Claim against the Debtor only to the extent upon entry of

a Final Order approving such Administrative Claim following the filing of a motion or application prior to the Administrative Claim Bar Date.

### 3.1.2.   Administrative Claim Bar Date.

Aside from Professional Fee claims, applications for the allowance of an Administrative Claim shall be made twenty (20) days after the Effective Date unless otherwise provided by a Final Order.

### 3.1.3.   Allowed Administrative Claim.

An Administrative Claim to the extent it is or becomes an Allowed Claim.

### 3.1.4.   Allowed Amount.

The amount of an Allowed Claim.

### 3.1.5.   Allowed Claim.

An Allowed Claim is any Claim which has been
> (1) scheduled by the Debtor pursuant to Bankruptcy Rule 1007 and
>> (a) not scheduled as disputed, contingent, or unliquidated,
>> (b) as to which no Proof of Claim has been filed, and
>> (c) where no objection to such scheduled Claim has been filed;
> (2) where a timely Proof of Claim has been filed as of the Bar Date and no objection thereto has been made; or
> (3) a Claim allowed by a Final Order.

### 3.1.6.   Allowed General Unsecured Claim.

A General Unsecured Claim to the extent it is or becomes an Allowed Claim.

### 3.1.7.   Allowed Secured Claim.

A Secured Claim to the extent such Claim is an Allowed Claim, and the Lien securing such Claim has not avoided pursuant to the Bankruptcy Code.

### 3.1.8.   Allowed Unsecured Claim.

An Unsecured Claim to the extent it is or becomes an Allowed Claim.

### 3.1.9.   Avoidance Action.

Any and all rights, claims, causes of action, arising under Sections 506(c), 510, 542, 543, 544, 545, 547, 548, 549, 550, 551, 552(b), 553, or 724 of the Bankruptcy Code.

### 3.1.10. Bankruptcy Code.

Title 11 of the United States Code as effective on the Confirmation Date.

### 3.1.11. Bankruptcy Court.

The United States District Court for the Southern District of Texas, Houston Division, having jurisdiction over this Chapter 11 case, or any appellate or other court that is competent to exercise jurisdiction over confirmation of this Plan.

**3.1.12. Bar Date.**
February 11, 2026.

**3.1.13. Cash.**
United States dollars.

**3.1.14. Cause of Action.**
Any Claim or cause of action, legal or equitable, whether arising under contract or tort, federal or state law, including Avoidance Actions, now owned or after acquired by the Debtor, whether such Claim or cause of action is commenced prior to or after the Petition Date.

**3.1.15. Chapter 11 Case.**
Case number 25-70297 filed under Chapter 11 of the Bankruptcy Code by the Debtor and pending before the Bankruptcy Court.

**3.1.16. Claim.**
Any right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, or the right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

**3.1.17. Claimant.**
Any person or entity asserting a Claim against the Debtor, its property, or its Estate.

**3.1.18. Collateral.**
Any property or interest in property of the Estate subject to a Lien that is not subject to avoidance under the Bankruptcy Court or otherwise invalid under the Bankruptcy Code or applicable state law.

**3.1.19. Confirmation Date.**
The date upon which the Bankruptcy Court enters the Confirmation Order.

**3.1.20. Confirmation Hearing.**
The hearing to be conducted by the Bankruptcy Court to determine whether to approve the Plan.

**3.1.21. Confirmation Order.**
The Order of the Bankruptcy Court approving and confirming the Chapter 11 Plan in accordance with the Bankruptcy Code.

**3.1.22. Creditor.**

15

Any person or entity that holds a Claim against the Debtor that arose or is deemed to have arisen on or prior to the Petition Date, including an Allowed Claim against the Debtor's Estate of any kind as provided by sections 502(g), 502(h), or 502(i) of the Bankruptcy Code.

### 3.1.23. Debtor.
The Debtor is GEC Transport Solutions, LLC.

### 3.1.24. Debtor in Possession.
The Debtor in its capacity as debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

### 3.1.25. Deficiency Claim.
A General Unsecured Claim to the extent that the amount by which an Allowed Secured Claim exceeds the value of any Collateral securing such Claim as may be determined by the Bankruptcy Court in accordance with sections 506(a) of the Bankruptcy Code.

### 3.1.26. Disclosure Statement.
The Disclosure Statement means the Debtor's Combined Disclosure Statement and Chapter 11 Plan, including all exhibits and schedules thereto and references therein that relate to the Plan, that is prepared and distributed according to the Bankruptcy Code, the Bankruptcy Rules, and any other applicable law.

### 3.1.27. Disputed Claim.
A Claim against the Debtor as to which an objection has been filed on or before the deadline for objecting to a Claim and which objection has not been withdrawn, settled, or otherwise resolved by Final Order.

### 3.1.28. Distribution.
The Cash or other property required by the Plan to be distributed to the holders of Allowed Claims.

### 3.1.29. Distribution Date.
The date on which distributions are made pursuant to the terms of the Plan to Holders of Allowed Claims.

### 3.1.30. Effective Date.
The date in which the Confirmation Order becomes a final order.

### 3.1.31. Equity Interest or Interest.
Equity Interest means a share in a corporation, interest of a limited partner in a limited partnership; or warrant or right, other than right to convert, to purchase, sell, or subscribe to a share, security, or interest of a corporation or limited partnership.

### 3.1.32. Equity Interest Holder or Interest Holder.
A holder of an equity security or equity interest of the Debtor.

### 3.1.33. Estate.

The estate created upon the filing of the Chapter 11 case pursuant to section 541 of the Bankruptcy Code, along with all rights, claims, and interests of the Debtor that arose prior to the Petition Date.

### 3.1.34. Final Order.

An order or judgment which has not been reversed, vacated, or stayed and as to which the time to appeal or move for new trial or rehearing has expired.

### 3.1.35. General Unsecured Claim.

A Claim other than a Secured Claim, an Administrative Claim, a Priority Claim, or a Subordinated Claim.

### 3.1.36. Governmental Unit.

The term "Governmental Unit" shall have the same meaning as provided in section 101(27) of the Bankruptcy Code.

### 3.1.37. Interest Holder.

Any holder or owner of an Equity Interest.

### 3.1.38. Lien.

A charge against or interest in property to secure payment of a debt or performance on an obligation which has not been avoided under the Bankruptcy Court or applicable state law.

### 3.1.39.    Notice of Default.

Notice to be transmitted to Debtor and its registered agent per the Texas Secretary of State via certified mail return receipt requested and First Class U.S. Mail.

### 3.1.40.    Petition Date.

October 7, 2025.

### 3.1.41.    Plan.

This Chapter 11 Reorganization, as may be amended or modified from time to time.

### 3.1.42.    Plan Ballot.

The form of ballot that the Debtor will transmit to Creditors and Interest Holders who are, or may be, entitled to vote on the Plan.

### 3.1.43.    Priority Claim.

Any Claim to the extent entitled to priority as provided in section 507(a) of the Bankruptcy Code.

### 3.1.44. Priority Non-Tax Claim.

Any Claim (other than an Administrative Claim or Priority Tax Claim) to the extent entitled to priority in payment under section 507(a) of the Bankruptcy Code including, but not limited to (a) Employee wage Claims for wages, salaries, or commissions, including vacation, severance or sick leave pay, earned within one hundred and eighty (180) days prior to the Petition, to the extent of $10,950 per employee; (b) Claims for contribution to an employee benefit plan as provided in section 507(a)(5) of the Bankruptcy Code; (c) Claims for deposits of up to $2,425 placed by consumers with the Debtor as provided in section 507(a)(7) of the Bankruptcy Code; (d) Claims based upon any commitment by the Debtor to a Federal depository institution regularly agency to maintain the capital of an insured depository institution as provided in section 507(a)(9); and (e) Claims for death and personal injury resulting from the operation of a motor vehicle or vessel if such operation was unlawful because the Debtor was intoxicated from using alcohol, a drug, or another substance as set forth in section 507(a)(10).

### 3.1.45. Priority Tax Claim.

Any Claim entitled to priority in payment under section 507(a)(8) of the Bankruptcy Code. A claim based upon an assessed *ad valorem* tax that is secured by a statutory lien on property that was administered during this Chapter 11 is a Secured Claim to the extent of the value of the property administered.

### 3.1.46. Pro Rata.

The proportion that the dollar amount of an Allowed Claim or Allowed Interest in a Class bears to the aggregate amount of all Allowed Claims or Allowed Interests in such Class.

### 3.1.47. Professional Fee Claims.

Administrative Claims for Professional Fees from the Petition Date through the Effective Date, as well as fees, expenses, and other reimbursable costs incurred after the Effective Date in connection with the preparation and filing of fee applications with the Bankruptcy Court in respect of a Professional Fee Claim.

### 3.1.48. Professional Fees.

All fees, costs, and expenses incurred in this Chapter 11 case by any professional person (within the meaning of sections 327, 328, or 1103 of the Bankruptcy Code or otherwise) and awarded by Final Order of the Bankruptcy Court pursuant to sections 330 or 503(b) or any other provision of the Bankruptcy Code and any professional fees, costs, and expenses which have been allowed pursuant to this Plan or by Final Order by the Bankruptcy Court.

### 3.1.49. Protected Persons.

As defined in Section 11.3 of this Plan.

### 3.1.50. Reorganized Debtor.

As of the Effective Date of the Plan, the Debtor as reorganized under the terms of the Plan.

### 3.1.51. Rights of Action.

Any avoidance, recovery, subordination, or other action of the Debtor, the Estate, or the Reorganized Debtor, any Cause of Action of the Debtor, the Estate, or Reorganized Debtor, or any objection to a Claim.

### 3.1.52. Schedules.

The Debtor's Schedules of Assets and Liabilities, as may be amended or supplemented, and filed with the Bankruptcy Court in accordance with section 521 of the Bankruptcy Code.

### 3.1.53. Secured Claim.

A Claim to the extent of the value, as may be determined by the Bankruptcy Court pursuant to section 506 of the Bankruptcy Code, of any interest in property of the Estate securing such Claim, or any Claim to the extent that it is subject to setoff pursuant to section 533 of the Bankruptcy Code. To the extent the value of such interest is less than the Claim amount, such Claim is a Deficiency Claim.

### 3.1.54. Unsecured Claim.

A Claim not secured by a charge, mortgage, or lien against or interest in the Estate, including by not limited to any Deficiency Claim or any claim for damages resulting from rejection of an executory contract or lease.

### 3.2.1.  Unclassified Claims.

As required by the United States Bankruptcy Code ("Code"), the Plan places claims and equity interests in various classes and describes the treatment each class will receive. The Plan also states whether each class of claims or equity interest is impaired or unimpaired. If the Plan is confirmed, your recovery will be limited to the amount provided by the Plan. Certain types of claims automatically entitled to specific treatment under the Code. They are not considered impaired, and holders of such claims do not vote on the Plan. They may, however, object if in their view their treatment under the Plan does not comply with that required by the Code.

### 3.2.1  Administrative Claims.

Administrative expenses are costs or expenses of administrating the Debtor's Chapter 11 case which are allowed under 11 U.S.C. 507(a)(2). Administrative expenses also include the value of any goods sold to the Debtor in the ordinary course of business and received within 20 days before the date of the bankruptcy petition. The Code requires that all administrative expenses be paid on the effective date of the Plan, unless a particular claimant agrees to a different treatment. Pursuant to section 1123(a)(1) of the Bankruptcy Code, certain Administrative Claims and Priority Tax Claims have not been classified and thus are excluded from the Classes of Claims and Interests set forth in this Article. The Debtor intends on paying all Allowed Administrative Claims on the Effective Date or otherwise agreed to by the Holder of the Allowed Administrative Claim.

The Debtor shall file monthly operating reports and post confirmation quarterly reports through the date this case is closed.

### 3.2.2.   Summary of Classes of Claims and Equity Interests.

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

The following designates the Classes of Claims against and Interests of the Debtor and specifies which of those Class are (a) Impaired or Unimpaired by the Plan, (b) entitled to vote to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code and (c) deemed to reject the Plan.

| Class | Designation | Treatment | Entitled to Vote |
|-------|-------------|-----------|------------------|
| 1 | Ad Valorem Claims | Impaired | Yes |
| 2 | Claims Secured by Equipment or Vehicles | Impaired | Yes |
| 3 | Other Secured Vehicular Claims | Impaired | Yes |
| 4 | Other Secured Claims | Unimpaired | No |
| 5 | Secured Claims with Collateral to be Surrendered | Unimpaired | No |
| 6 | Unsecured Priority Claims | Impaired | Yes |
| 7 | General Unsecured Claims | Impaired | Yes |

### 3.2.3.   Classification of Claims and Equity Interests.

#### 3.2.3.1      Class 1 – Ad Valorem Claims.

Class 1

| Class 1 Claimant | Claim No. | Claim Amount | Collateral |
|------------------|-----------|--------------|------------|
| Hildago County | 7 | $51,764,59 | Debtor's business property |

#### 3.2.3.2.      Class 2 – Claims Secured by Equipment or Vehicles.

Class 2

| Class 2 - Secured Claimant | Claim No. | Secured Claim | Deficiency Claim | Collateral |
|---------------------------|-----------|---------------|------------------|------------|
| Ally Bank | 6 | $61,375.00 | $37,943.87 | 2023 Peterbilt 579 |
| Ally Bank | 16 | $61,375.00 | $37,943.87 | 2023 Peterbilt 579 |
| Alpine Advance 5 LLC | | $68,307.52 | - | All equipment, accounts receivable, |

| Class 2 - Secured Claimant | Claim No. | Secured Claim | Deficiency Claim | Collateral |
|---|---|---|---|---|
| | | | | depository accounts |
| Utility Trailer (successor to BMO Harris Bank N.A.) | 26 | $23,233.65 | - | 2020 Utility 4000DX (9) |
| BMO Harris Bank N.A. | 2 | $63,990.00 | - | 2021 Kenworth T680 (3) |
| Commercial Credit Group | 20 | $78,983.80 | - | 2020 Peterbilt 579 (6); 2021 Peterbilt 579 |
| Encore Bank[3] | 21 | $1,145,266.62 | - | 2022 Kenworth T680(6); 2023 Peterbilt 579 (5); 2024 Peterbilt 579 (2) 2005 Great Dane Dry Van (2) 2006 Luftkin TFVC (4); 2006 Luftkin Dry Van (5); 2006 HYTR YL (4); 2006 Great Dane Trailer; 2007 Great Dane Dry Van (6); 2007 VNTC Dry Van; 2008 Utility Dry Van (8) |
| Financial Pacific Leasing | 17 | $58,308.08 | - | Communications equipment |
| Midland Estates Bank | 4 | $70,000.00 | $39,883.20 | 2023 Kenworth T680 |
| Midland Estates Bank | 5 | $140,000.00 | $95,233.18 | 2023 Kenworth T680 (2) |
| Simmons Bank | 24 | $84,059.75 | - | 2021 Peterbilt 579 (2) |
| TBK, SSB, a Texas State Savings Bank | 28 | $142,684.05 | | 2021 Kenworth T680 (5) |
| The Huntington National Bank | 18 | $119,745.59 | | 2021 Peterbilt 579 |

[3] Claim to be reduced by 32% per stipulation surrendering certain collateral filed at docket no. 92.

| Class 2 - Secured Claimant | Claim No. | Secured Claim | Deficiency Claim | Collateral |
|---|---|---|---|---|
| U.S. Small Business Association | 15 | $159,105.30 | | All deposits, all equipment, accounts receivable |
| Wabash National Financial Services | 11 | $65,392.00 | | 202 Wabash Dry Van (8) |
| | | | | |

### 3.2.3.3.      Class 3 – Other Secured Vehicular Claims.

Class 3

| Class 3 Claimant | Claim No. | Secured Claim | Deficiency Claim | Collateral |
|---|---|---|---|---|
| TBK, SSB, a Texas State Savings Bank | 28 | $142,684.05 | | 2021 Kenworth T680 (5) |
| First Citizens Bank | 3 | $30,246.00 | - | 2020 Wabash 53' Van (4) |

### 3.2.3.4.      Class 4 – General Secured Claims.

Class 4

| Class 4 Claimant | Claim No. | Secured Claim | Collateral |
|---|---|---|---|
| JD Factors, LLC | 25 | $2,587,019.11 | All of debtor's financial accounts |

### 3.2.3.5.      Class 5 – Secured Claims with Collateral to be Surrendered.

| Class 5 Claimant | Claim No. | Secured Claim | Collateral |
|---|---|---|---|
| Cross Roads Equipment Lease & Finance | 1 | $614,370.46 | 2023 Wabash DVCVHPC (13) |
| Regions Bank dba Ascentium | 19 | $876,536.30 | 2023 Kenworth T 680; 2023 Peterbilt 579; 2024 Peterbilt 579 |
| Samsara Capital | | Unknown | Unknown |

| Class 5 Claimant | Claim No. | Secured Claim | Collateral |
|---|---|---|---|
| Sumitomo Mitsui | 22 | $195,363.02 | 2023 Peterbilt 579 (2) |
| Sumitomo Mitsui | 23 | $95,841.29 | 2023 Kenworth T680 |

### 3.2.3.6.        Class 6 – Governmental Secured Claims.

| Class 6 Claimant | Claim No. | Secured Claim | Collateral |
|---|---|---|---|
| U.S. Small Business Association | 15 | $159,105.30 | All deposits, all equipment, accounts receivable |

### 3.2.3.7.        Class 7 – Unsecured Priority Claims.

| Class 7 Claimant | Claim No. | Unsecured Priority Claim |
|---|---|---|
| Internal Revenue Service | 10 | $328,070.52 |
| Texas Comptroller | 27 | $1,684.50 |

### 3.2.3.8.        Class 8 – General Unsecured Claims.

Class 8

| Unsecured Claimant | Claim No. | Unsecured Claim |
|---|---|---|
| AIG Property | 6 | $19,550.30 |
| Alan McDaniel | | $493,112.25 |
| Alan McDaniel | | $559,180.91 |
| Alpine Advance 5 | | $68,307.52 |
| Ally Bank | 8 | $37,943.87 |
| Ally Bank | 16 | $37,943.87 |
| American Express | 13 | $1,495.91 |
| American Express | | $775.77 |
| CA Estates LLC | | $189,206.84 |

| Unsecured Claimant | Claim No. | Unsecured Claim |
|---|---|---|
| | | |
| Cobalt Funding Solutions | | $193,947.95 |
| Credit Collection Services | | $9.40 |
| Delaware Department of Transportation | | $155.50 |
| E-Z Pass MA State | | $52.65 |
| Escobedo & Cardenas, LLP | | $750.00 |
| F.H. Cann & Associates, Inc. | | $39.32 |
| Forward Financing, LLC | | $76,326.68 |
| Griffith Law Group, LLP | | $775.40 |
| Illinois Tolls | | $343.15 |
| Illinois Tollway | 12 | $7,788.20 |
| Jeffrey Riemersma | | $970.91 |
| Juan Jose Alvarez Chavez | | $1,857.75 |
| Internal Revenue Service | 10 | $83,952.89 |
| Kansas Turnpike Authority | 9 | $9,190.45 |
| Leaf Capital Funding | 30 | $6,833.22 |
| Leaf Capital Funding | 31 | $15,696.51 |
| Leaf Capital Funding | 32 | $11,340.95 |
| Leaf Capital Funding | 33 | $1,251.32 |
| Leaf Capital Funding | 34 | $14,655.87 |
| Leandro Nino | | $298.50 |
| Lexington Insurance Company | | $19,550.63 |

| Unsecured Claimant | Claim No. | Unsecured Claim |
| --- | --- | --- |
| | | |
| Maryland Transportation Authority | | $5,029.42 |
| Meged Funding Group | 29 | $95,561.25 |
| NCC | | $118.75 |
| NJC Ezpass Delaware River | | $2,090.00 |
| NTTA North Texas | | $10,930.14 |
| NY State Bridge and Tunnels | | $16,107.98 |
| NYS Thruway Authority | | $8,872.61 |
| Ohio Turnpike and Infrastructure Commission | | $145.75 |
| Oklahoma Turnpike | | $1,195.18 |
| Pennsylvania Turnpike Authority | | $659.23 |
| Professional Account Management LLC | | $70.00 |
| River Link Ohio | | $547.32 |
| RMA Cameron County Texas | | $4,263.33 |
| Southern Connector South Carolina | | $67.60 |
| Transportation Specialty Underwriters | | $24,276.20 |
| Treasure Services | | $13,209.73 |
| Vantage Bank | | $1,599.59 |

| Unsecured Claimant | Claim No. | Unsecured Claim |
|---|---|---|
|  |  |  |
| Vantage Bank |  | $4,743.88 |
| Vantage Bank |  | $1420.91 |
| Vantage Bank |  | $159.14 |

### 3.2.3.7.    Equity Interest Holders.

The equity interest holders of the Debtor include the following individuals and entities and their respective interests:

| Benjamin Cavazos | 100% ownership |
|---|---|

## IV.    IMPAIRMENT OF CLASSES & RESOLUTION OF CLAIM CONTROVERSIES

### 4.1.    Impaired Classes entitled to vote.

Only holders of Claims which are in impaired Classes may vote on the Plan.  The following Classes of Claims and Interests are impaired and entitled to vote under the Plan: Classes 1 through 7.

### 4.2.    Claim Controversies.

Should a controversy or dispute arise relating to the classification, impairment, or voting rights of any Creditor or Interest Holder under the Plan, prior to confirmation, the Bankruptcy Court may, after notice and a hearing, determine such controversy.  The Bankruptcy Court may estimate, for voting purposes, the amount of any contingent or unliquidated claim, or fixing or liquidation of which, as the case may be, would unduly delay the administration of the Chapter 11 bankruptcy.  The Bankruptcy court may conduct a valuation hearing pursuant to section 506(b) of the Bankruptcy Code to determine the Allowed Amount of any Secured Claim.

## V.    TREATMENT OF CLAIMS AND EXECUTORY CONTRACTS

### 5.1.    Treatment of Impaired Classes.

#### 5.1.1. Treatment of Class 1—Ad Valorem Claims.

a.  *Classification*:  Class 1 shall consist of the Ad Valorem Claims below:

| Class 1 Claimant | Claim No. | Claim Amount | Collateral |
|---|---|---|---|
| Hildago County | 7 | $51,764,59 | Debtor's business property |

b. *Treatment*. Commencing the first day of the calendar month thirty (30) days following the Effective Day, the Debtor shall pay Claimant sixty (60) consecutive monthly payments in Cash with payments calculated on a five (5) year amortization of the Claims from the Petition Date, with interest bearing on the respective Claims per applicable statutory non-bankruptcy law.   Claimant shall retain all liens it currently holds, whether for pre-petition tax years or for the current tax year, on any property of the Debtor until it receives payment in full of all taxes, and interest owed to it under the provisions of this Plan, and its lien position shall not be diminished.

c. *Default*.  Holders of *ad valorem* Allowed Secured Claims in Class 1 shall be entitled to exercise its rights and remedies pursuant to applicable non-bankruptcy law upon default of its obligations under the Plan to Holders of *ad valorem* Allowed Secured Claims in Class 1.

d. *Voting*.  Class 1 is impaired under the Plan.  Holders of *ad valorem* Allowed Secured Claims are entitled to vote to accept or reject the Plan.

**5.1.2. Treatment of Class 2 – Claims Secured by Equipment or Vehicles.**

a. *Classification*.  Class 2 shall consist of following Secured Claims which are secured by the Debtor's equipment or vehicles below:

Class 2

| Class 2 Claimant | Claim No. | Secured Claim | Deficiency Claim | Collateral |
|---|---|---|---|---|
| Ally Bank | 8 | $61,375.00 | $37,943.87 | 2023 Peterbilt 579 |
| Ally Bank | 16 | $61,375.00 | $37,943.87 | 2023 Peterbilt 579 |
| Utility Trailer (successor to BMO Harris Bank N.A.) | 26 | $23,233.65 | - | 2020 Utility 4000DX (9) |
| BMO Harris Bank N.A. | 2 | $63,990.00 | - | 2022 Kenworth T680 |
| Commercial Credit Group | 20 | $78,983.80 | - | Accounts receivable, 2019 Peterbilt 579(8) |
| Encore Bank | 21 | $1,145,266.62 | - | 2022 Kenworth T680(6); 2023 Peterbilt 579 (5); 2024 Peterbilt 579 |

27

| Class 2 Claimant | Claim No. | Secured Claim | Deficiency Claim | Collateral |
|---|---|---|---|---|
| | | | | (2) 2005 Great Dane Dry Van (2) 2006 Luftkin TFVC (4); 2006 Luftkin Dry Van (5); 2006 HYTR YL (4); 2006 Great Dane Trailer; 2007 Great Dane Dry Van (6); 2007 VNTC Dry Van; 2008 Utility Dry Van (8) |
| Financial Pacific Leasing | 17 | $58,308.08 | - | Communications equipment |
| First Citizens Bank | 3 | $30,246.00 | - | 2023 Kenworth T680 (2) |
| Midland Estates Bank | 4 | $70,000.00 | $39,883.20 | 2024 Peterbilt 579 (2) |
| Midland Estates Bank | 5 | $140,000.00 | $95,233.18 | |
| Simmons Bank | 24 | $84,059.75 | - | 2021 Peterbilt 579 (2) |
| The Huntington National Bank | 18 | $119,745.59 | | |
| U.S. Small Business Association | 15 | $159,105.30 | | |
| Wabash National Financial Services | 11 | $65,392.00 | | 202 Wabash Dry Van (8) |

b. *Treatment.* In full satisfaction, the Claimants secured by the Debtor's vehicles and equipment in Class 2 shall receive payment of their Secured Claim in Cash with payments commencing the first day of the month following thirty (30) days from the Effective Date. Claimants shall receive sixty (60) equal monthly payments of their Secured Claim amortized from the Petition Date at the rate of 8.25% per annum without any penalty to prepay the Allowed Claim. Claimants shall retain their liens until their Secured Claims are paid in full. To the extent such Claimant has a Deficiency Claim, such Deficiency Claim shall be treated as a General Unsecured Claim in accordance with Paragraph 5.1.7 of the Plan. Upon payment of the Secured Claim, each Claimant shall release its liens and provide title to the Reorganized Debtor within ten (10) days upon payment of the Secured Claim.

c.  *Default*.  In the event of failure of the Reorganized Debtor to timely make its payments, which shall constitute an event of default as to the specific Claimant in Class 2, such Claimant shall send Notice of Default to the Reorganized Debtor.  If Default is not cured within thirty (30) days of the date of such notice, Claimant(s) may proceed to collect all amounts owed pursuant to state law without further recourse to the Bankruptcy Court.  Claimant(s) is only required to send two (2) Notices of Default, and upon the third event of default, Claimant(s) may proceed to collect all amounts owed under state law without further notice.

d.  *Voting*.  Class 2 is impaired under the Plan.  Holders of Allowed Secured Claims secured by the Debtor's equipment and vehicles are entitled to vote to accept or reject the Plan.

### 5.1.3. Treatment of Class 3 – Other Secured Vehicular Claims.

a.  *Classification*.  Class 3 shall consist of following Secured Claims which are secured by the Debtor's vehicles below:

Class 3

| Class 3 Claimant | Claim No. | Secured Claim | Collateral |
|---|---|---|---|
| TBK, SSB, a Texas State Savings Bank | 28 | $142,684.05 | 2021 Kenworth T680 (5) |
| First Citizens Bank | 3 | $30,246.00 | 2020 Wabash 53' Van (4) |

b.  *Treatment*. In full satisfaction, the Claimants in Class 3 secured by the Debtor's vehicles shall receive payment of their Secured Claim in Cash with payments commencing the first day of the month following thirty (30) days from the Effective Date.  Claimants shall receive twelve (12) equal monthly payments of their Secured Claim amortized from the Petition Date at the rate of 8.25% per annum without any penalty to prepay the Allowed Claim.  Claimants shall retain their liens until their Secured Claims are paid in full.  Upon payment of the Secured Claim, each Claimant shall release its liens and provide title to the Reorganized Debtor within ten (10) days upon payment of the Secured Claim.

c.  *Default*.  In the event of failure of the Reorganized Debtor to timely make its payments, which shall constitute an event of default as to the specific Claimant in Class 3, such Claimant shall send Notice of Default to the Reorganized Debtor.  If Default is not cured within thirty (30) days of the date of such notice, Claimant(s) may proceed to collect all amounts owed pursuant to state law without further recourse to the Bankruptcy Court.  Claimant(s) is only required to send two (2) Notices of Default, and

upon the third event of default, Claimant(s) may proceed to collect all amounts owed under state law without further notice.

d. *Voting*.  Class 3 is impaired under the Plan.  Holders of Allowed Secured Claims secured by the Debtor's vehicles are entitled to vote to accept or reject the Plan.

### 5.1.4. Treatment of Class 4 – General Secured Claims.

a. *Classification*.  Class 4 shall consist of following Secured Claims which are secured by the Debtor's financial accounts as follows:

Class 4

| Class 4 Claimant | Claim No. | Secured Claim | Collateral |
| --- | --- | --- | --- |
| JD Factors, LLC | 25 | $2,587,019.11 | All of debtor's financial accounts |

b. *Treatment*. Claimants in Class 4 shall receive payment in accordance with their respective underlying loan and security documents.

c. *Voting*.  Class 4 is unimpaired under the Plan.  Holders of Allowed Secured Claims secured by the Debtor's vehicles are deemed to have accepted the Plan.

### 5.1.5. Treatment of Class 5– Secured Claims with Collateral to be Surrendered.

a. *Classification*.  Class 5 shall consist of following Secured Claims which are secured by the Debtor's vehicles and equipment below:

Class 5

| Class 5 Claimant | Claim No. | Secured Claim | Collateral |
| --- | --- | --- | --- |
| Cross Roads Equipment Lease & Finance | 1 | $614,370.46 | 2023 Wabash DVCVHPC (13) |
| Regions Bank dba Ascentium | 19 | $876,536.30 | 2023 Kenworth T 680; 2023 Peterbilt 579; 2024 Peterbilt 579 |
| Samsara Capital | | Unknown | Unknown |
| Sumitomo Mitsui | 22 | $195,363.02 | 2023 Peterbilt 579 (2) |
| Sumitomo Mitsui | 23 | $95,841.29 | 2023 Kenworth T680 |

| Class 5 Claimant | Claim No. | Secured Claim | Collateral |
|---|---|---|---|
|  |  |  |  |

b. *Treatment*. In full satisfaction, Claimants in Class 5 shall receive their Collateral.

c. *Voting*.  Class 5 is unimpaired under the Plan.  Holders of Other Secured Claims secured by the Debtor's vehicles are not entitled to vote to accept or reject the Plan.

### 5.1.6. Treatment of Class 6– Secured Governmental Claims.

a. *Classification*.  Class 6 shall consist of following Secured Claims which are secured by the Debtor's property as follows below:

| Class 6 Claimant | Claim No. | Secured Claim | Collateral |
|---|---|---|---|
| U.S. Small Business Association | 15 | $159,105.30 | All deposits, all equipment, accounts receivable |

b. *Treatment*. In full satisfaction, the Claimants in Class 6 secured by the Debtor's property shall receive payment of their Secured Claim in Cash with payments commencing the first day of the month following twelve months (12) months from the Effective Date.  Claimants shall receive one hundred twenty (120) equal monthly payments of their Secured Claim amortized from the Petition Date at the rate of 6.25% per annum without any penalty to prepay the Allowed Claim.  Claimants shall retain their liens until their Secured Claims are paid in full.  Upon payment of the Secured Claim, each Claimant shall release its liens and provide title to the Reorganized Debtor within ten (10) days upon payment of the Secured Claim.

c. *Default*.  In the event of failure of the Reorganized Debtor to timely make its payments, which shall constitute an event of default as to the specific Claimant in Class 6, such Claimant shall send Notice of Default to the Reorganized Debtor.  If Default is not cured within thirty (30) days of the date of such notice, Claimant(s) may proceed to collect all amounts owed pursuant to state law without further recourse to the Bankruptcy Court.  Claimant(s) is only required to send two (2) Notices of Default, and upon the third event of default, Claimant(s) may proceed to collect all amounts owed under state law without further notice.

d. *Voting*.  Class 6 is impaired under the Plan.  Holders of Allowed Secured Claims secured by the Debtor's vehicles are entitled to vote to accept or reject the Plan.

### 5.1.7. Treatment of Class 7– Unsecured Priority Claims.

a. *Classification*.  Class 7 shall consist of following Unsecured Priority Claims which are below:

Class 7

| Class 6 Claimant | Claim No. | Unsecured Priority Claim |
|---|---|---|
| Internal Revenue Service | 10 | $328,070.52 |
| Texas Comptroller | 27 | $1,684.50 |

b. *Treatment*. In full satisfaction, Claimants in Class 7 shall receive payment in Cash of their allowed priority claim commencing the first day of the month following thirty (30) days from the Effective Date in sixty (60) equal monthly payments with interest bearing on the Claim at the applicable bankruptcy and non-bankruptcy law rate.

c. *Default*.  In the event of failure of the Reorganized Debtor to timely make its payments, which shall constitute an event of default as to the specific Claimant in Class 7, such Claimant shall send Notice of Default to the Reorganized Debtor.  If Default is not cured within thirty (30) days of the date of such notice, Claimant(s) may proceed to collect all amounts owed pursuant to state law without further recourse to the Bankruptcy Court.  Claimant(s) is only required to send two (2) Notices of Default, and upon the third event of default, Claimant(s) may proceed to collect all amounts owed under state law without further notice.

d. *Voting*.  Class 7 is unimpaired under the Plan.

### 5.1.8. Treatment of Class 8– General Unsecured Claims.

a. *Classification*.  Class 8 shall consist of following General Unsecured Claims which are below:

Class 8

| Unsecured Claimant | Claim No. | Unsecured Claim |
|---|---|---|
| AIG Property | 6 | $19,550.30 |
| Alan McDaniel | | $ 93,112.25 |
| Alan McDaniel | | $559,180.91 |
| Alpine Advance 5 | | $68,307.52 |
| Ally Bank | 8 | $37,943.87 |
| Ally Bank | 16 | $37,943.87 |
| American Express | 13 | $1,495.91 |
| American Express | | $775.77 |

| Unsecured Claimant | Claim No. | Unsecured Claim |
|---|---|---|
| CA Estates LLC | | $189,206.84 |
| Cobalt Funding Solutions | | $193,947.95 |
| Credit Collection Services | | $9.40 |
| Delaware Department of Transportation | | $155.50 |
| E-Z Pass MA State | | $52.65 |
| Escobedo & Cardenas, LLP | | $750.00 |
| F.H. Cann & Associates, Inc. | | $39.32 |
| Forward Financing, LLC | | $76,326.68 |
| Griffith Law Group, LLP | | $775.40 |
| Illinois Tolls | | $343.15 |
| Illinois Tollway | 12 | $7,788.20 |
| Jeffrey Riemersma | | $970.91 |
| Juan Jose Alvarez Chavez | | $1,857.75 |
| Internal Revenue Service | 10 | $83,952.89 |
| Kansas Turnpike Authority | 9 | $9,190.45 |
| Leaf Capital Funding | 30 | $6,833.22 |
| Leaf Capital Funding | 31 | $15,696.51 |
| Leaf Capital Funding | 32 | $11,340.95 |
| Leaf Capital Funding | 33 | $1,251.32 |
| Leaf Capital Funding | 34 | $14,655.87 |
| Leandro Nino | | $298.50 |

| Unsecured Claimant | Claim No. | Unsecured Claim |
|---|---|---|
| Lexington Insurance Company | | $19,550.63 |
| Maryland Transportation Authority | | $5,029.42 |
| Meged Funding Group | 29 | $95,561.25 |
| NCC | | $118.75 |
| NJC Ezpass Delaware River | | $2,090.00 |
| NTTA North Texas | | $10,930.14 |
| NY State Bridge and Tunnels | | $16,107.98 |
| NYS Thruway Authority | | $8,872.61 |
| Ohio Turnpike and Infrastructure Commission | | $145.75 |
| Oklahoma Turnpike | | $1,195.18 |
| Pennsylvania Turnpike Authority | | $659.23 |
| Professional Account Management LLC | | $70.00 |
| River Link Ohio | | $547.32 |
| RMA Cameron County Texas | | $4,263.33 |
| Southern Connector South Carolina | | $67.60 |
| Transportation Specialty Underwriters | | $24,276.20 |
| Treasure Services | | $13,209.73 |

| Unsecured Claimant | Claim No. | Unsecured Claim |
|---|---|---|
|  |  |  |
| Vantage Bank |  | $1,599.59 |
| Vantage Bank |  | $4,743.88 |
| Vantage Bank |  | $1420.91 |
| Vantage Bank |  | $159.14 |

b.  *Treatment*. In full satisfaction, Claimants in Class 8 shall receive Pro Rata Cash payments of $50,000.00 on or before twenty-four (24) months following the Effective Date.

c.  *Default*.  In the event of failure of the Reorganized Debtor to timely make its payments, which shall constitute an event of default as to the specific Claimant in Class 8, such Claimant shall send Notice of Default to the Reorganized Debtor.  If Default is not cured within thirty (30) days of the date of such notice, Claimant(s) may proceed to collect all amounts owed pursuant to state law without further recourse to the Bankruptcy Court.  Claimant(s) is only required to send two (2) Notices of Default, and upon the third event of default, Claimant(s) may proceed to collect all amounts owed under state law without further notice.

d.  *Voting*.  Class 8 is unimpaired under the Plan and Claimants are entitled to vote to accept or reject the Plan.

## 5.2.    Treatment of Equity Interest Holders.

The equity interest holders identified in <u>Section 3.2.3.</u> of this Plan shall retain their equity interests in exchange for a release of claims against the Debtor below:

## VI.    MEANS OF IMPLEMENTATION & RISKS ASSOCIATED WITH PLAN

## 6.1.    Source of Payments.

The payments contemplated in this Plan shall be funded from Cash on hand and payments in Cash received from the ordinary course of the Debtor's operations. The Debtor intends on supplementing its Disclosure Statement and Plan with a sixty-month business forecast.

## 6.2.    Allocation of Distributions Between Principal and Interest.

Except as otherwise provided in this Plan, to the extent that any Allowed Claim entitled to a distribution under the Plan is comprised of indebtedness and accrued but unpaid interest thereon, such distribution shall be allocated to the principal amount (as determined for U.S. federal income tax purposes) of the Claim first, and then to accrued but unpaid interest.

**6.3. Post-confirmation Management.**

Management of the Reorganized Debtor shall remain with Benjamin Cavazos.

**6.4. Tax Consequences of Plan.**

**Creditors and Equity Interest Holders concerned with how the Plan may affect their tax liability should consult with their own accountants, attorneys, and/or advisors.**

### 6.4.1. Taxation Generally.

This discussion is for informational purposes and does not constitute tax advice. The federal income tax consequence of implementation of the Plan to a holder of a Claim will depend on (i) whether the Claim constitutes a debt or security for federal income tax purposes, (ii) whether the holder of the Claim receives consideration in more than one tax year, (ii) whether the holder of the Claim is a resident of the United States, (iv) whether the consideration received by the holder of the Claim is part of an integrated transaction, (v) whether the holder of the Claim utilizes an accrual or cash method of accounting, and (iv) whether the holder has previously taken a bad debt deduction or worthless security deduction with respect to the Claim.

The federal, state, and foreign tax consequences of the Plan are complex and in many areas, uncertain, therefore you are urged to consult a Tax Professional. The Estate of the Debtor may incur a capital gain or loss due to the implementation of the Plan. The Debtor will not recognize any income to the extent of forgiveness of debt under this Plan

### 6.4.2. Exemption From Certain Transfer Taxes.

To the maximum extent provided by section 1146(a) of the Bankruptcy Code, any post-Confirmation sale by the Debtor, in contemplation of, or in connection with the Plan or pursuant to : (1) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instruments of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, in each case to the extent permitted by applicable bankruptcy law, and the appropriate state or local government officials or agents shall forego collection of any such tax or governmental assessment and accept for filing and recordation of any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

## VII.    EXECUTORY CONTRACTS AND UNEXPIRED LEASES

The Debtor is a party to several executory contracts or unexpired leases and will accept or reject each following executory contractor or unexpired lease as follows:

| Counterparty | Lease/Executory Contract | Treatment | Cure Amount |
|---|---|---|---|
| Alan McDaniel 1065 Kessler Pkway Dallas, TX 7508 | Commercial lease | Assume | N/A |
| Alpine Advance 5 151 New Park Ave. Hartford, CT 06106 | MCA Contract | Reject | $68,307.52 |
| Cobalt Funding Solutions 99 Wall Street Suite 3618 New York, NY 10005 | MCA Contract | Reject | $193,947.95 |
| Forward Financing, LLC 53 State Street Boston, MA 02109 | MCA Contract | Reject | $76,326.68 |
| Meged Funding Group 108 W 39th Street Suite 1006 #2171 New York, NY 10018 | MCA Contract | Reject | $98,211.25 |

If you object to the rejection of your contract or lease, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan.

## VIII.   CAUSES OF ACTION

### 8.1.    Preferences.

Pursuant to the Bankruptcy Code, the Debtor may recover certain preferential transfers of property, including cash, made while insolvent during the 90 days immediately prior to the filing of the petition with respect to pre-existing debts, to the extend the transferee received more than it would have in respect to the pre-existing debt had the Debtor been liquidated under Chapter 7 of the Bankruptcy Code ("Preference Claims").  In the case of "insiders," the Bankruptcy Code provides for a one-year look back preference period.  There are certain defenses these actions such as transfers made in the ordinary course of the Debtor's business.  Additionally, a defense may exist if the transferee extended credit after the transfer.

**8.2.    Fraudulent Transfers.**

Under the Bankruptcy Code and state law, the Debtor may recover certain transfers of property, including the grant of a security interest in property, made while insolvent or which rendered it insolvent ("Fraudulent Transfer Claims").  The Debtor has conducted a limited analysis of potential recoveries under Chapter 5 of the Bankruptcy Code and concluded that potential claims may exist.  All avoidance actions and rights pursuant to sections 506(c), 510, 542, 544, 545, 549 of the Bankruptcy Code.  Th

## IX.    VOTING PROCEDURES

**9.1    Ballots and Deadline to Vote.**

A ballot to be used to vote to accept or reject the Plan is enclosed with this Disclosure Statement and a creditor entitled to vote must (i) carefully review the ballot and instructions, ii) complete and execute the ballot, (iii) return the executed ballot to the address indicated by the deadline specified by the Bankruptcy Court.

The Bankruptcy Court has ordered that in order to be counted for voting purposes, ballots for the acceptance or rejection of the Plan must be received by the Debtor no later than _____, 2026 at 5:00 p.m.

**9.2.    Creditors Entitled to Vote.**

Any Creditor whose Claim is impaired under the Plan is entitled to vote if the claim is (i) not scheduled as disputed, contingent or unliquidated, or (ii) the proof of claim was filed before the last date set by the Bankruptcy Court for filing Proofs of Claims and no objection has been filed to the Claim.

Holders of Disputed Claims are not entitled to vote on the Plan.  Any Claim to which an objection has been filed and remains pending, is not entitled to vote unless the Bankruptcy Court, upon motion by the Creditor holding the Disputed Claim, temporarily allows the Claim in an amount that it deems proper for accepting or rejecting the Plan.

Classes of Claims that are not impaired are deemed to have accepted the Plan per section 1126(f) of the Bankruptcy Code and are not entitled to vote.  Only classes of claims or interests that are "impaired" are entitled to vote on a plan; generally, a claim is impaired under a plan of reorganization if the plan alters the legal, equitable, or contractual rights to which the holder of such claim is entitled.

**9.3.    Vote Required for Accepting Classes.**

A class of claims accepts the Plan if both of the following occur: (1) the holders of more than one-half (1/2) of the allowed claims in the class, who vote, cast their votes to accept the Plan,

and (2) the holders of at least two-thirds (2/3) in dollar amount of the allowed claims in the class, who vote, cast their votes to accept the Plan.

A class of equity interests accepts the Plan if the holders of at least two-thirds (2/3) in amount of the allowed equity interests of the class, who vote, casts their votes to accept the Plan.

**9.4.   Cramdown and Withdrawal of the Plan.**

The Debtor reserves the right to withdraw the Plan if the Plan is not accepted by all classes of impaired Creditors.  If the Plan is accepted by one or more Classes of impaired Creditors, the Debtor reserves the right to request the Bankruptcy Court to approve the Plan per section 1129(b) of the Bankruptcy Code.

**X.   EFFECT OF CONFIRMATION OF THE PLAN**

**10.1.   Discharge of Debtor, Injunction, and Vesting of Property of the Estate.**

Upon completion of the Plan, the Debtor shall be discharged from any debt that arose before confirmation of the Plan, to the extent specified in § 1129 of the Code.  Upon discharge, the distributions, rights, and treatment provided for in the Plan shall be in complete satisfaction, discharge, and release, of Claims, Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether know or unknown, against, liabilities of, liens on, obligations of, rights against, and Interests in, the Debtor of any of her assets, properties, regardless of whether the property has been distributed or retained per the Plan

The Plan Proponent may modify the Plan at any time before confirmation of the Plan so long as the requirements under 1122 and 1123(aside from 1123(a)(8)) are met.  The Debtor may modify at any time after confirmation if the plan was confirmed under 1191(a) of the Bankruptcy Code and if the plan meets 1122 and 1123(aside from 1123(a)(8)).

**10.2.   Final Decree.**

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Plan Proponent, or such other party as the Court shall designate in the Plan Confirmation Order, shall file a motion with the Court to obtain a final decree to close the case.  Alternatively, the Court may enter such a final decree on its own motion.

**10.3.   Legally Binding Effect.**

The provisions of this Plan shall bind all Creditors and Interest Holders, whether or not they accept the Plan.  On or after the Effective Date, all holders of Claims shall be precluded and enjoined from asserting any Claim (i) against the Debtor based on any transaction or other activity of any kind that occurred prior to the Confirmation Date except as permitted under the Plan and (ii) any derivative claims, including against third parties asserting alter ego claims, fraudulent transfer claims or any other type of successor liability.

**10.4.    Limited Protection of Certain Parties.**

Except as provided in <u>Section 3.2.3 of the Plan</u>, neither (a) the Debtor or any of its employees, officers, directors, agents, representatives, affiliates, attorneys, financial advisors, or any other professional persons employed by the Debtor or (b) each Professional of the Debtor or any of its employees, officers, directors, agents, representatives, affiliates, attorneys, financial advisors, or any other professional persons employed by any of them (hereinafter, collectively the "<u>Protected Parties</u>"), shall have or incur any liability to any person or entity under any theory of liability for any act or omission occurring on or before the Petition Date in connection or related to the Debtor, or the Debtor's estate, including but not limited to (i) formulating, preparing, disseminating, implementing, confirming, consummating or administering the Plan (including solicitation of acceptances or rejections thereof); or (ii) the Disclosure Statement or any contract, instrument, release, or other agreement or document entered into or any action taken or omitted to be taken in connection with the Plan, except for acts constituting willful misconduct, gross negligence, or *ultra vires* activity and in all respects such Protected Parties shall be entitled to rely on good faith upon the advice of counsel.   In any action, suit or proceeding by any person contesting any action or non-action by any Protected Party as constituting willful misconduct, gross negligence or *ultra vires* activity, or not being in good faith, the reasonable attorneys' fees and costs of the prevailing party will be paid by the losing party and as a condition to going forward with such action, suit, or proceeding at the outset thereof, all parties will be required to provide appropriate proof and assurances of their capacity to make such payments of reasonable attorneys' fees and costs in  the event they fail to prevail.

**10.5.    Anti-Discrimination Provisions of Bankruptcy Code.**

A Governmental Unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, or discriminate with respect to such a grant against the Debtor or another person with whom the Debtor has been or are associated or affiliated solely because of the commencement, continuation, or termination of the case or because of any provision of the Plan or the legal effect of the Plan, and the Confirmation Order will constitute an express injunction against any such discriminatory treatment by a Governmental Unit.  A Governmental Unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to the Debtor based upon any requirement that the Debtor place a bond or other surety obligation with such governmental unit as a condition of receipt of such a license, permit, charter, franchise, or other similar grant to the Debtor.

**10.6.    Preservation of Claims and Rights.**

Confirmation of the Plan effects no settlement, compromise, waiver or release of any Claim, Cause of Action, Right of Action or claim for relief unless the Plan or the Confirmation specifically and unambiguously provide so.   The non-disclosure or non-discussion of any particular Claim, Cause of Action, Right of Action or claim for relief is not and shall not be construed as a settlement, compromise, waiver, or release of any such Claim, Cause of Action, Right of Action or claim for relief.

**10.7.    Retention of Jurisdiction by Bankruptcy Court.**

The Court shall retain and have exclusive jurisdiction over this Chapter 11 Case to the maximum extent as provided by law for the following purposes subsequent to Confirmation of the Debtor's Plan: (i) to determine any and all objections to the allowance and classification of Claims or Interests; (ii) to determine the validity and priority of any Lien; (iii) to determine the Allowed Amount of any Claim, whether secured or unsecured; (iv) to allow any and all applications for allowances of compensation and reimbursement of expenses payable from the estate; (v) to determine any and all applications or motions pending before the Court on the Effective Date, including but not limited to, any motions for the rejection, assumption and or assignment of any executory contract or unexpired lease; (vi) to consider and approve any modification of the Plan, remedy any defect or omission or reconcile any inconsistency in the Plan, or any order of the Court, including the Confirmation Order or any transactions or payments contemplated in the Plan; (vii) to consider and act on the compromise or settlement of any claim or cause of action by or against the Debtor; (viii) to issue orders in aid of the execution and implementation of the Plan and Confirmation Order; and (ix) to hear and determine matters concerning federal or local taxes.

## XI.    CLAIM OBJECTION PROCEDURES, TREATMENT OF DISPUTED CLAIMS, AND PROCEDURES FOR ASSERTING CLAIMS

**11.1    Objection Process.**

Unless otherwise provided by the Bankruptcy Court, the Debtor shall file and serve all objections to Claims and Equity Interests the later of (i) ninety (90) days after the Effective Date; (ii) the date on which a proof of claim, proof of interest, or request for payment is filed with the Bankruptcy Court; or (iii) such other date as may be approved by the Bankruptcy Court after notice and hearing.

**11.2    Filing of Claims and Causes of Action.**

Debtor reserves the exclusive right to prosecute any and all Claims and Causes of Action of the Debtor and the Estate.

**11.3    Disputed Claim Reserve.**

A Disputed Claims Reserve shall be established by the Debtor for treatment of Disputed Claims and held in a separate bank account from all other funds.  Debtor will deposit into the Disputed Claims Reserve an amount equal to the Pro Rata share of Distribution allocable to such Disputed Claims, in accordance with the distributions as provided for in the Plan, as if such Claims were Allowed Claims pending a determination of their entitled under the terms of the Plan.  Once the Disputed Claim is determined by Final Order or settlement to be an Allowed Claim, the Debtor is authorized to pay the Allowed Amount of such Claim from the Disputed Claim Reserve.

**11.4    Distribution to Holders of Disputed Claims.**

Within twenty (20) Business Days after a Disputed Claim is deemed an Allowed Claim , any Distributions reserved for such Allowed Claim shall be released from the Disputed Claims Reserve and delivered to the holder of such Allowed Claim.  In the event that the Disputed Claim is disallowed in its entirety or reduced in portion, the disallowed or reduced portion of the shall be

distributed from the Disputed Claim Reserve to holders of Allowed Claims without further approval.

**11.5    Disallowance of Late Filed Proofs of Claims.**

Except as otherwise provided in the Plan, any proof of claim filed after the Bar Date is hereby disallowed.

**11.5    Record Date for Claims.**

Record date for Distributions to Allowed Claims under this Plan shall be the date the Bankruptcy Court enters its Order approving the Disclosure Statement and Debtor will rely on the claims docket maintain by the Clerk for proof of claims filed in this case.

**11.6    Distributions to Holders of Allowed Claims.**

Distributions to holders of Allowed Claims will be made pursuant to written instructions provided to the Debtor by such holder(s) of an Allowed Claim or to the last known address of each such holder as set forth on the proof of claims filed by these holders of Allowed Claims or the last known address if no proof of claim was filed, unless Debtor received written notification of a change in address.  If the holder's Distribution is returned undeliverable, it will be treated as a disallowed Disputed Claim as provided in Section 8.4.

**11.7    Unclaimed Distributions.**

Debtor will file a notice of undeliverable Distribution with the Bankruptcy Court within thirty (30) days of the returned Distribution.  All claims for undeliverable Distributions must be made no later than forty-five (45) days from the date of the filing of the notice, and after such date, the unclaimed Distribution will be distributed to holders of Allowed Claims per Section 2.4 and the remaining Claim of the holder of the undeliverable Distribution will be discharged and forever barred.

**11.8    Undeposited Checks.**

Checks issued with respect to Distributions for Allowed Claims will be null and void if not negotiated within ninety (90) days after the date of issuance.  Distributions with respect to un-negotiated checks will treated per Section 2.4 and the remaining Claim of the holder of the unnegotiated check will be discharged and forever barred.

**XII.    GENERAL PROVISIONS**

**12.1.    Bar Date and Objections to Administrative Claims.**

Except as explicitly set forth herein, no Administrative Claim, other than Professional Fees and United States Trustee fees, will be paid unless the holder of such Administrative Claim has filed an application for payment of such Administrative Claim on or before the Administrative Claim Bar Date.  Upon the filing of any application for payment, the entity seeking payment of an Administrative Claim shall provide notice by United States Mail.  Any Administrative Claim, other than Professional Fees and United States Trustee fees, not filed in accordance with this section shall be barred and the Debtor shall have no liability for payment of any such Administrative Claim.

Objections to Applications for payment of Administrative Claims may be filed by any party in interest.  In order to be considered, such objections must be filed on or before the twenty-first (21st) day following the date on which the application was filed.  Any objections will be considered by the Bankruptcy Court.

**12.2.   Professional Claims.**

Each holder of a Professional Fee Claim shall be paid in respect of such Professional Fee Claim in Cash, in full, on the Effective Date, unless otherwise provided for in the Plan, or if such Claim has not been approved by the Bankruptcy Court on or before the Effective Date, within thirty (30) days after Bankruptcy Court approval of the Professional Fee.  Final fee applications for any Professional Fee Claim that has not been approved as of the Effective Date shall be filed within ninety (90) days of the Effective Date and such applications and objections thereto shall be filed in accordance with and comply with the Bankruptcy Code, Bankruptcy Rules, Local Bankruptcy Rules.

**12.3.   Amendment of the Plan.**

The Plan may be amended or modified by the Debtor after the Effective Date pursuant to section 1127 of the Bankruptcy Code.

**12.4.   Reservation of Claims.**

Except as explicitly set forth herein, the Debtor reserves any and all claims and rights against any and all third parties, whether such claims and rights arose before, on or after the Petition Date, the Confirmation Date, the Effective Date, to any and all Claims and Causes of Action for relief that the Debtor may have against any director, officer, any insurer under any insurance policy, or any other person or entity.  Entry of the Confirmation Order shall not constitute *res judicata* or any bar, estoppel, or inhibit any actions by the Debtor relating to any Claims or Causes of Action.

**12.5.   Calculation of Dates.**

The provisions of Bankruptcy Rule 9006 shall govern the calculation of any dates or deadlines referred to in the Plan.

**12.6.   Governing Law.**

Except to the extent that the Bankruptcy Code or Bankruptcy Rules are applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Texas, without giving effect to any conflicts of law.

**12.7.   Conflict.**

Except as provided for in the Plan, to the extent there are any inconsistencies between the Confirmation Order and the Plan and Disclosure Statement, any other agreement entered into by the Debtor and any third parties, the Plan controls the Disclosure Statement and any such agreements and the Confirmation Order (and any other orders of the Bankruptcy Court) controls the Plan.

**12.8.   Setoffs.**

The Debtor may but shall not be required to set off against any Claims and payments to be made pursuant to the Plan in respect of such Claims, any and all debts, liabilities and claims of every type and nature that the Estate may have against the Holder of any Claim, but neither the failure to do so nor the Allowance of any such Claims, whether pursuant to the Plan or otherwise, shall constitute a waiver or release by the Debtor of any such claims it may have against such Holder of any Claim, and all such claims shall be reserved for and retained by the Debtor.

**12.9.   Alternative Means to Confirmation.**

The proposed Plan affords the holders of Claims the maximum potential for realization of the Debtor's assets and is in the best interest of the holders.  If the Plan is not confirmed, theoretical alternatives include (i) continuation of the Chapter 11 case; (ii) alternative plans of reorganization; (iii) liquidation of the Debtor under Chapter 7; and (iv) dismissal of the Chapter 11.

**12.10.   Alternative Plans of Reorganization.**

If the Plan is not confirmed, other parties in interest could attempt to propose a different plan or plans.  However, such plans, might involve other forms of reorganization or liquidation of the Debtor's operations and assets.  Any other alternative plans, however, would likely result in additional administrative expenses to the Estate and would provide little to no benefit.

**12.11.   Liquidation under Chapter 7.**

The Debtor does not believe that liquidation under Chapter 7 would be in the best interest of the creditors and the conversion of the case to a case under Chapter 7 would result in the loss of the going concern value of the Debtor as well as the additional administrative expenses attributable to the statutory trustee fees and professional fees for the trustee's professionals.

Dated: March 6, 2026

By:   */s/ Benjamin Cavazos*_____
        Benjamin Cavazos
        Manager